UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| MATTHEW JONES, | ) |  |
|---|---|---|
| Plaintiff | ) ) ) | |
| v. | ) ) | 2:13-CV-00476-JAW |
| MAINE DEPARTMENT OF CORRECTIONS, *et als.*, | ) ) ) ) | |
| Defendants | ) | |

## RECOMMENDED DECISION

In this case, Plaintiff Matthew Jones, an inmate at the Maine Correctional Center (MCC), seeks to recover from Defendant Maine Department of Corrections and others for injuries that he allegedly sustained during an encounter with another inmate while a corrections officer was present.

The matter is before the Court on Defendants' Motion for Summary Judgment (ECF No. 8). Plaintiff did not oppose the Motion for Summary Judgment in accordance with Local Rule 56, but filed an unsworn response to summary judgment, which response includes some factual assertions and argument.[1] As explained below, the recommendation is that the Court grant Defendants' motion.[2]

### PROCEDURAL BACKGROUND

Plaintiff filed his complaint on December 26, 2013. The Court subsequently granted Plaintiff leave to proceed *in forma pauperis*. Defendants accepted service on January 22, 2014,

---

[1] Plaintiff also asserted that he would "have a notarized, signed affidavit" soon. Plaintiff has not made a subsequent filing.
[2] The Court referred the motion for report and recommended decision.

and the court set March 18, 2014, as Defendants' deadline to respond to Plaintiff's complaint. In response to the complaint, Defendants filed their Motion for Summary Judgment on February 28, 2014.[3] (Motion for Summary Judgment, ECF No. 8.) The Court granted Plaintiff's two requests for more time to respond to the motion. On April 8, 2014, Plaintiff filed his response. (Response to Summary Judgment, ECF No. 14.)

## FACTS

The record consists of the following uncontroverted facts.[4] At the time he commenced this action, Plaintiff was incarcerated at the Maine Correctional Center (MCC). On April 3, 2013, another inmate, Corey Waugh, assaulted Plaintiff causing Plaintiff to suffer facial injuries. At the time of the incident, Defendant Robert Kaiser, Jr., was temporarily assigned to oversee Dorm 5, a residential unit with a capacity of approximately 85 inmates of which unit Plaintiff was a resident. On April 3, Defendant Kaiser was covering for the regular duty officer, who was attending a unit staff meeting. Because Dorm 5 was not his regular assignment, Defendant Kaiser was not familiar with all of the inmates who lived in the dorm. (Defendants' Statement of Material Facts ¶¶ 1-4.)

Defendant Kaiser heard banging sounds and responded to cell 134, where he saw Plaintiff and Mr. Waugh. Mr. Waugh appeared to be bleeding from his face, and Defendant Kaiser assumed that a fight had taken place. Defendant Kaiser ordered Plaintiff to leave the cell and stand outside. He also directed Mr. Waugh to sit down on the bunk. Both prisoners followed the instructions.

---

[3] "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed. R. Civ. P. 56(b).
[4] As part of their summary judgment submission, Defendants filed a Statement of Material Facts in accordance with Local Rule 56. Plaintiff did not oppose any of the factual assertions contained in the Statement. Pursuant to Local Rule 56(f), facts contained in a statement of material facts "shall be deemed admitted unless properly controverted," if the facts in question are "supported by record citations." The facts are thus derived from Defendants' statements and the record materials cited in support thereof, which materials include the affidavits of three corrections officers and the Department of Corrections' policy regarding the prisoner grievance process.

Defendant Kaiser then called for a supervisor, and ordered all other prisoners in the dorm to lock in. *(Id.* ¶¶ 5-8.)

As Defendant Kaiser was visually checking to confirm that the other prisoners in the dorm were locking in, Mr. Waugh rushed past him and attacked Plaintiff, punching Plaintiff repeatedly in the face. Defendant Kaiser did not physically intervene, but immediately called for assistance and ordered Mr. Waugh to stop. Within one minute, several officers arrived on the scene. One of the officers, Sgt. Kevin Klaxton, applied pepper spray to Mr. Waugh, which caused him to stop punching Plaintiff. Defendant Kaiser also called for medical assistance, and medical personnel appeared almost immediately. According to Defendant Kaiser's affidavit testimony, his failure to intervene was in accord with prison policy because he was the sole officer on the scene. (*Id.* ¶¶ 9-11.)

The Department of Corrections has a grievance policy (Policy 29.1) that covers, among other things, prisoner grievances regarding claims in which an inmate asserts that staff failed to protect the inmate from assault by another inmate. When an inmate is committed to the MCC, he or she is issued a prisoner handbook, which contains a copy of the Department's grievance procedure. Plaintiff was committed on September 10, 2012, and on that day he signed a certificate acknowledging receipt of the prisoner handbook. (*Id.* ¶¶ 12-17.) The grievance policy was in effect on April 3, 2013, the date of the incident.

The grievance policy requires an inmate to file a grievance within fifteen days of the incident giving rise to the grievance. On August 5, 2013, Dennis Shipman, MCC's grievance review officer, received from Plaintiff a grievance dated June 23, 2013. Mr. Shipman dismissed the grievance because Plaintiff submitted it after the expiration of the fifteen day filing period, and because Plaintiff failed to attempt an informal resolution before filing the formal grievance. A

3

review of Plaintiff's records does not reveal that Plaintiff lacked knowledge of the grievance process, or that he suffered from any physical injuries that prevented him from filing the grievance within the required time period.

## DISCUSSION

In his complaint, Plaintiff asserts two theories of relief. Plaintiff first contends that Defendants are responsible for his physical injuries because the incident in which he was injured occurred in the presence of Defendant Kaiser. Plaintiff also asserts that Defendants are legally responsible for his damages because Defendants never pursued criminal charges against his assailant. (Complaint ¶¶ 29-30.)

In their motion for summary judgment, Defendants contend that summary judgment is appropriate because Plaintiff failed to exhaust his administrative remedies before initiating this action. (Motion for Summary Judgment at 6-8.) Defendants also argue that the Court should enter summary judgment in favor of Defendants because (1) there is no evidence of deliberate indifference (*Id.* at 4-6); (2) there is no evidence that would support either a supervisory claim or a municipal claim against the Department, Commissioner Ponte or Superintendent Landry (*Id.* at 9-10); and (3) because Defendants were not legally obligated to Plaintiff to pursue criminal charges against his assailant (*Id.* at 5-6).

Plaintiff's unsworn response suggests that he might be able to supply evidence that could generate a factual dispute regarding the exhaustion defense. At present, however, Plaintiff has failed to submit that evidence.

**A.     Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). "After the moving party has presented evidence in support of its motion for summary judgment, 'the burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor.'" *Woodward v. Emulex Corp.*, 714 F.3d 632, 637 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 158 (1st Cir.1998)). To meet this burden, the non-moving party's response must be supported with "competent evidence," such as affidavits, and not merely with unsworn allegations and representations. *Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London*, 637 F.3d 53, 56 (1st Cir. 2011); *see also* Fed. R. Civ. P. 56(c).

A court reviews the factual record in the light most favorable to the non-moving party, resolving evidentiary conflicts and drawing reasonable inferences in the non-movant's favor. *Hannon v. Beard*, 645 F.3d 45, 47-48 (1st Cir. 2011). If the court's review of the record reveals evidence sufficient to support findings in favor of the non-moving party on one or more of his claims, there exists a trial-worthy controversy and summary judgment must be denied as to the supported claims. Unsupported claims are properly dismissed. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses.").

**B.  Exhaustion of Administrative Remedies**

The Prison Litigation Reform Act (PLRA) requires a prisoner to exhaust the available administrative remedies before commencing a civil action. In particular, the PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that this provision requires "proper exhaustion" of a prisoner's administrative

remedies. *Woodford v. Ngo,* 548 U.S. 81, 93 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91.

The summary judgment record establishes that Plaintiff did not comply with the applicable grievance policy and thus failed to exhaust his administrative remedies. In addition, although Plaintiff maintains in his unsworn response to the motion that an investigator told him that there was no need to file a grievance until the investigative report issued, Plaintiff has presented no record evidence from which the Court could conclude that Plaintiff's late filing of the grievance was justified or could be excused.[5] Plaintiff's failure to raise a genuine dispute regarding his compliance with the requirements of the PLRA warrants the entry of summary judgment in favor of Defendants.[6]

## C. Deliberate Indifference

The Eighth Amendment and the Fourteenth Amendment,[7] protect inmates from conduct of prison officials that constitutes deliberate indifference toward prison conditions that impose a substantial risk of serious harm. *Burrell v. Hampshire Cnty.,* 307 F.3d 1, 7 (1st Cir. 2002). Among other dangerous conditions, "[p]rison officials have a responsibility not to be deliberately indifferent to the risk to prisoners of violence at the hands of other prisoners." *Id.* A deliberate indifference claim requires proof not only that a plaintiff was exposed to a substantial risk of serious harm, but also that the defendants were deliberately indifferent to the risk. *Id.* at 8. "Not

---

[5] *See Messa v. Goord,* 652 F.3d 305, 309 (2nd Cir. 2011) ("An inmate's failure to comply . . . may be excused where . . . defendants' own actions inhibit[ed] exhaustion . . .").
[6] Even if Plaintiff had presented record evidence that could excuse his late filing, Plaintiff did not include in his grievance any reference to his claim that Defendants' failure to pursue criminal charges against the person who inflicted his injuries. With respect to that claim, therefore, Plaintiff has never filed a grievance.
[7] Defendants' summary judgment filings do not reflect whether Plaintiff was a pretrial detainee or serving a sentence following conviction.

6

every injury suffered by a prisoner at the hands of another results in constitutional liability on the part of prison officials." *Id.* at 7-8. To be deliberately indifferent, the conduct in question must be "on the order of something 'repugnant to the conscience of mankind.'" *Thurston v. Cumberland Cnty.*, 2:13-CV-00013-GZS, 2014 WL 294487 (D. Me. Jan. 27, 2014) (quoting *Estelle v. Gamble,* 429 U.S. 97, 105 (1976)). Mere negligence will not suffice. For example, in the context of cases involving the direct application of force by corrections officers, the Eighth Amendment is violated when officers purposefully subject an inmate to the "unnecessary and wanton infliction of pain." *Whitley v. Albers,* 475 U.S. 312, 319 (1986); *Estelle v. Gamble,* 429 U.S. 97, 103 (1976). Such a claim requires a showing that the defendant applied or permitted the application of force "maliciously and sadistically for the very purpose of causing harm." *Whitley,* 475 U.S. at 320-21 (quoting *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir. (1973)).

Viewing the summary judgment record in the light most favorable to Plaintiff, Defendant Kaiser arguably could have done more to prevent or limit the impact of Mr. Waugh's assault of Plaintiff. None of the possible bases of liability (i.e., failure to intercede, failure to ensure that Mr. Waugh did not have access to Plaintiff), however, cannot reasonably be construed as an act that is repugnant to the conscience of mankind, or as an act that constitutes a deliberate choice to permit Mr. Waugh to injure Plaintiff. Similarly, even if the Court were to determine that Defendants owed a legal duty to Plaintiff to seek criminal charges against Mr. Waugh, the record lacks any evidence from which a fact finder could conclude that Defendants' decision not to seek charges constitutes deliberate indifference. Defendants, therefore, are entitled to summary judgment.

### D. Assault and Battery

Plaintiff also alleges in his complaint that the failure to "present the facts of [the] assault and injuries to the District Attorney for prosecution—especially when an officer in their employ . . . witnessed the assault—constitutes the tort of assault and battery." (Complaint ¶ 30.) To the extent that Plaintiff's complaint is construed to assert a state law claim, unlike Plaintiff's constitutional claim, which arises under 42 U.S.C. § 1983, the state law claim of assault is not within this Court's original jurisdiction. Because an early summary judgment disposition of Plaintiff's federal claim is recommended, the most appropriate disposition of the state law claim is to dismiss the claim without prejudice to Plaintiff's ability to pursue the claim in state court. *See* 28 U.S.C. § 1367(c)(3), (d).

## CONCLUSION

Based on the foregoing analysis, the recommendation is that the Court grant Defendants' Motion for Summary Judgment (ECF No. 8), enter judgment in favor of Defendants on Plaintiff's federal claims, and dismiss Plaintiff's state law claim without prejudice.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison  
U.S. Magistrate Judge

Dated this 27th day of June, 2014